Jeffery Tramone DOBBINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–06–00589–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 27, 2007.
Rehearing Overruled May 10, 2007.

Clinard J. Hanby, Spring, for appellants.

Shirley Cornelius, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and EDELMAN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Jeffery Tramone Dobbins, appeals from his conviction for aggravated assault on a public servant. At trial, the State presented evidence that appellant drove his vehicle at an off-duty deputy constable. The jury found appellant guilty and assessed punishment at eight years' imprisonment. In his first three issues, appellant contends that the evidence was legally and factually insufficient to prove that he (1) acted intentionally or knowingly, (2) threatened the deputy, or (3) used a deadly weapon. In his fourth issue, appellant contends that the trial court erred in refusing to instruct the jury on the lesser included offense of simple assault. We affirm.

## I. Background

The only witness called during the guilt/innocence phase of trial was Harris County Deputy Constable D.B. Vest. Deputy Vest testified that on November 16, 2005, he was working off-duty security at a restaurant while dressed in uniform. At around 1:30 to 2:00 p.m., Vest was in the restaurant parking lot when he observed a green Buick, which he did not recognize, enter and drive to an area behind the restaurant where usually only employees parked. The vehicle backed into a parking space beside a gold Suburban.

As Vest exited his own vehicle, he could hear a car alarm sounding.[1] He began walking toward the Suburban. Appellant appeared, spotted Deputy Vest, then quickly disappeared behind the Suburban. Shortly thereafter, the Buick came out of its parking space headed toward Vest, with appellant driving and another man in the passenger's seat. Vest held up his hand and asked appellant to stop. The vehicle stopped about one to one-and-a-half car lengths from Vest. Vest then proceeded "around to the driver's side," and the vehicle moved forward, hitting Vest and lifting him onto the hood.[2]

Vest said that when the vehicle had first stopped, it was clear that appellant saw him standing there. When asked how fast the vehicle was going when it moved toward him the second time, Vest said it was traveling "[a]nywhere from five to eight miles, maybe ten miles, tops."[3] He also said that there was plenty of room for appellant to have gone around him. After hitting Vest, the vehicle continued to travel forward while Vest gripped the edge of the hood where it meets the windshield. He stated that his feet were rubbing the vehicle's grill, so that he was completely on top of the hood. This brought him face-to-face with appellant.

Vest said that he wondered if he was going to die, and he realized that if he tried to get off the hood, the vehicle might run over him. He pulled his pistol out and repeatedly yelled at appellant to stop the vehicle. He also managed to call on his radio for assistance. At some point, the passenger began saying that he "[didn't] want anything to do with it." Finally, the passenger reached over and put the vehicle in park, causing it to stop.[4] The pas-

---

1. It could be reasonably assumed from the tenor and context of Vest's testimony that it was the Suburban's alarm that was sounding; however, he does not say this explicitly.

2. At another point in his testimony, Vest stated "as I made my way up to the vehicle and I was going to come around to the driver's side, he came forward."

3. On cross-examination, Vest said that he "couldn't tell ... exactly how fast the car was going."

4. At one point in his testimony, Vest said that the passenger "[put] the car in gear," and in another place he agreed the passenger put the car in "park." It is clear that Vest meant that the passenger took action to stop the vehicle.

senger then exited, and Vest got off the hood and ordered the passenger to the ground. Once the passenger obeyed, Vest turned back to appellant and ordered him out of the vehicle. Instead, appellant remained in the vehicle, backed into a parking space, then drove out of the parking lot. Subsequently, Vest was given the license plate number of appellant's vehicle by a bystander and later identified appellant from his driver's license photograph.

Vest additionally testified that he felt threatened when appellant drove at him and that he suffered a few bruises on his shin from the incident. He also said that the incident could have been a lot worse. He opined that a motor vehicle used in that manner was a deadly weapon. On cross-examination, Vest acknowledged that although it felt like he was on top of the hood "forever," he could have just been up there "momentarily." He could not say exactly how long he was on the hood.

## II. Sufficiency of the Evidence

In his first three issues, appellant contends that the evidence was legally and factually insufficient to support his conviction. In considering these issues, we utilize the normal standards of review. *See King v. State,* 29 S.W.3d 556, 562 (Tex. Crim.App.2000) (legal sufficiency standards); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000) (factual sufficiency standards). Appellant was charged with aggravated assault on a public servant. As charged in the indictment, a person commits this offense when he or she intentionally or knowingly threatens a person the actor knows is a public servant with imminent bodily injury, while the public servant is lawfully discharging an official duty, and the person uses or exhibits a deadly weapon during the commission of

the assault. Tex. Penal Code Ann. § 22.02(a)(2), (b)(2) (Vernon Supp.2005); *see also Dunklin v. State,* 194 S.W.3d 14, 21–22 (Tex.App.-Tyler 2006, no pet.). As stated, appellant attacks the legal and factual sufficiency of the evidence to prove three elements of the offense, namely that he (1) acted intentionally or knowingly; (2) threatened Vest; and (3) used or exhibited a deadly weapon during commission of the assault. We address each in turn.[5]

### A. Mental State

In his first issue, appellant contends that the evidence was legally and factually insufficient to prove that he intentionally or knowingly threatened Deputy Vest. Under the Penal Code, "[a] person acts intentionally ... with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a). Furthermore,

[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(b). A defendant's intent or knowledge is a question of fact to be determined from the totality of the circumstances. *See Smith v. State,* 965 S.W.2d 509, 513 (Tex.Crim.App.1998).

Appellant first asserts that in this case "the usual indicators of intent or knowledge are absent" because there was no evidence of his speaking any threaten-

---

**5.** For the most part, appellant makes the same arguments in regards to both the legal and factual sufficiency of the evidence.

Therefore, we will discuss and consider his arguments concurrently under both standards of review.

ing words or making any particular gestures. However, evidence of threatening language or gestures is not required to prove a defendant's knowledge or intent; the jury may infer the existence of either mental state from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *See Hart v. State,* 89 S.W.3d 61, 64 (Tex.Crim. App.2002).

Appellant next argues that there was no evidence that he "raced the engine," "peeled out," or otherwise rapidly accelerated toward Vest. He also contends that there is no evidence that he actually saw Vest in front of the vehicle when he drove forward, emphasizing Vest's comment that he (Vest) was proceeding "around to the driver's side" when the vehicle moved forward and hit him. Appellant concludes that at most the evidence shows his desire to leave the parking lot and his recklessness or negligence in doing so.

As discussed above, Vest testified that appellant initially drove directly at him out of the parking space and stopped only when Vest put up his hand and asked him to stop. That is strong evidence that appellant did in fact see Vest in front of the vehicle at that point. Vest further testified that when he proceeded to the driver's side—or, as he stated later in his testimony, "I made my way up to the vehicle and I was going to come around to the driver's side"—the vehicle moved forward and hit him. The evidence therefore shows that Vest was directly in front of the vehicle when it stopped; he then walked in the direction of the driver's side but was hit and lifted onto the hood before he reached the side of the vehicle. This evidence supports the conclusion that appellant saw Vest in front of the vehicle and intentionally or knowingly drove the vehicle into him.

Further, appellant's suggestion that he may have been simply reckless or negligent in thinking that Vest had already cleared the front of the vehicle is not persuasive because (1) there is no evidence to support it; (2) Vest testified that he was hit by the grill of the vehicle and ended up on the hood; this was not a glancing blow; and (3) since appellant was the driver and Vest was walking from directly in front to the driver's side, he would have been directly in front of appellant when struck. Finally, appellant's conduct after driving the vehicle into Vest also constitutes evidence of his intent to threaten Vest and his knowledge that his actions would have that result. *See, e.g., Henderson v. State,* 825 S.W.2d 746, 749–50 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd) (holding that in determining intent to kill, jury was entitled to consider events occurring before, during, and after commission of the offense). Rather than stopping immediately after hitting Vest, appellant continued to drive with Vest on the hood for what seemed like "forever" to Vest. Appellant suggests that he may have simply momentarily froze when he hit the deputy and that he did not drive the vehicle "for more than the normal reaction and braking time." However, there is no evidence to support these arguments; to the contrary, Vest's ride on the hood was long enough for him to pull his pistol, yell repeatedly at appellant to stop, and call for assistance on his radio. Additionally, after the passenger stopped the vehicle and Vest got off the hood, appellant fled the scene. *See Rodriguez v. State,* 129 S.W.3d 551, 564 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant's attempt to flee cast doubt on his claim that he did not know co-defendant had stolen a cash register).

For the foregoing reasons, we find that the evidence was legally and factually sufficient to support the jury's finding that appellant possessed at least one of the requisite mental states. Accordingly, we overrule his first issue.

### B. Threat

In his second issue, appellant contends that the evidence was legally and factually insufficient to prove that he threatened Vest. In the recent opinion of *Olivas v. State*, the Court of Criminal Appeals considered a challenge to the sufficiency of the evidence in the aggravated assault by threat context. 203 S.W.3d 341, 342–351 (Tex.Crim.App.2006). The Court held that evidence establishing the complainant's perception of a threat, coupled with proof that a threat was made, was sufficient to sustain the conviction for aggravated assault by threat. *Id.* at 350.[6]

Here, appellant contends that there was no evidence that appellant communicated or Vest perceived any threat. "The gist of the offense of assault ... is that one acts with intent to cause a reasonable apprehension of imminent bodily injury...." *Garrett v. State*, 619 S.W.2d 172, 174 (Tex.Crim.App.1981); *Edwards v. State*, 57 S.W.3d 677, 679 (Tex.App.-Beaumont 2001, pet. ref'd). It is well established that threats can be conveyed in more varied ways than merely a verbal manner; a threat may be communicated by action or conduct as well as by words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex.Crim.App.1984).[7]

In *McGowan*, the court held that the evidence was insufficient to prove assault by threat where the complainant was stabbed in the back of the head and did not see the knife prior to being stabbed. *Id.*; *see also Richardson v. State*, 834 S.W.2d 535, 537 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (holding evidence was insufficient to prove threat where complainant was shot from behind without warning); *Tullos v. State*, 698 S.W.2d 488, 490 (Tex.App.-Corpus Christi 1985, pet. ref'd) (holding evidence was insufficient to prove threat where complainant was stabbed in the back).

Vest testified that appellant initially drove the vehicle directly at him and stopped only when he (Vest) raised his hand and asked appellant to stop. Shortly afterwards, as Vest moved toward the driver's side, the vehicle started back up and drove into him at 5–10 miles per hour. Vest expressly stated that he felt very threatened when the vehicle started back up and drove at him. Appellant insists that Vest's testimony must be read as indicating that the movement of the vehicle, the impact, and his feeling threatened "all happened at essentially the same time." However, Vest's testimony clearly indicates a progression of events, not simultaneous occurrences. The vehicle moved toward him, stopped in front of him, started toward him again, reached 5–10 miles per hour, then struck Vest. In short, Vest's testimony clearly demonstrates that appellant's conduct in driving

---

**6.** In *Olivas*, the Court discussed in lengthy dicta what is required to prove that a person threatened another with eminent bodily injury under the assault by threat statute. 203 S.W.3d at 342–351. Specifically, the Court focused on whether the State must prove that the complainant perceived the threat in order to establish the elements of the offense. The Court suggested that the answer is probably no, that the complainant need not have perceived the threat in order for an offense to have occurred. *Id.* at 345–49. However, because the Court ultimately concluded that it did not need to definitively resolve the ques-

tion in order to decide the issues raised in *Olivas*, the question remains open. *Id.* at 349; *see also id.* at 351–52 (Keller, P.J., concurring) (arguing that the Court should have definitively held that a threat need not be perceived to constitute an offense).

**7.** Although the Court in *Olivas* explained that several courts of appeals have misconstrued *McGowan* over the years (by interpreting it as requiring that a threat must be perceived to constitute an assault), the Court reaffirmed *McGowan* as controlling law. 203 S.W.3d at 348–49.

the vehicle at Vest communicated a threat and that Vest perceived that threat before he was actually hit. Thus, under *McGowan* and *Olivas,* there was sufficient evidence to support the finding that appellant communicated a threat against Vest. Appellant's second issue is overruled.

## C. Deadly Weapon

 In his third issue, appellant contends that the evidence was legally and factually insufficient to prove his use of a deadly weapon during the assault. The Penal Code lists two categories of "deadly weapons." *See* TEX. PENAL CODE ANN. § 1.07 (Vernon Supp.2006); *Robertson v. State,* 163 S.W.3d 730, 732 (Tex.Crim.App. 2005). The first category is comprised of those instruments designed to be deadly weapons, including "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A). The second category is comprised of those instruments whose use transforms them into deadly weapons, including "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Drichas v. State,* 175 S.W.3d 795, 798 (Tex.Crim.App.2005). Proof that the defendant possessed a specific intent to use an instrument as a deadly weapon is not required. *Id.*

Appellant notes that in order for an object to be considered capable of causing death or serious bodily injury, more than mere theoretical capability must be shown, citing *In re S.B.,* 117 S.W.3d 443, 447 (Tex.App.-Fort Worth 2003, no pet.), and

*Johnston v. State,* 115 S.W.3d 761, 764 (Tex.App.-Austin 2003), *aff'd,* 145 S.W.3d 215 (Tex.Crim.App.2004). Appellant then asserts that in every reported case where a court has upheld a finding of use of an automobile as a deadly weapon, at least one of two factors existed: (1) the defendant drove the vehicle in a reckless manner clearly endangering the lives of others, and (2) the defendant rapidly accelerated the vehicle toward the complainant. Appellant contends that there is no evidence in the present case of either factor.

Even if we were to agree with appellant that one or the other factor must be proven, the record here contains evidence supporting the conclusion that both factors existed. Vest's testimony, that appellant drove directly at him at 5–10 miles per hour, constitutes evidence of much more than mere reckless driving; it demonstrates knowing and intentional conduct that endangered Deputy Vest's life.[8] Regarding the second supposed factor identified by appellant, the record contains evidence of significant acceleration. Vest testified that after appellant initially drove at him and stopped, the vehicle was approximately one to one-and-a-half car lengths from Vest. Vest then began to move toward the driver's side of the vehicle and the vehicle moved forward, hitting Vest at an estimated 5–10 miles per hour. For a stopped vehicle to reach 5–10 miles per hour in less than one to one-and-a-half car lengths requires acceleration.

Furthermore, driving a vehicle at a person at 5–10 miles per hour, fast enough to lift the person onto the hood as it did Deputy Vest, is certainly capable of causing death or serious bodily injury. It is within common knowledge that use of au-

---

8. Furthermore, it should be noted that the intent with which a vehicle was used is not generally relevant to the question of whether the vehicle was a deadly weapon in the manner of its use. *Walker v. State,* 897 S.W.2d 812, 814 (Tex.Crim.App.1995); *Garcia v. State,* 92 S.W.3d 574, 575 (Tex.App.-Austin 2002, no pet.).

tomobiles has caused countless deaths and serious injuries. While the severity of the resulting injuries when a pedestrian is actually hit by a vehicle may depend on a variety of factors—including the height,. weight, and constitution of the person hit, the part of the body impacted, and whether the person was knocked aside, onto the hood, or under the tires—such use *is capable* of causing death or serious bodily injury. *See Johnston v. State*, 150 S.W.3d 630, 638 (Tex.App.-Austin 2004, no pet.) ("The State need not prove that the defendant caused or even intended to cause death or serious bodily injury in order to justify a deadly weapon finding; rather the State must only prove that the actual use or intended use of the object was capable of causing death or serious bodily injury."); *see also United States v. Hoffman*, 9 F.3d 49, 50 (8th Cir.1993) (per curiam) (rejecting argument that there was no risk of serious bodily injury in causing slow-speed automobile collisions, stating "a risk of this kind of injury is inherent in the automobile accidents"); [9] *Dolkart v. State*, 197 S.W.3d 887, 891 (Tex.App.-Dallas 2006, pet. ref'd) (rejecting insufficiency of the evidence claim regarding use of vehicle as a deadly weapon where defendant claimed she merely meant to tap complainant's bicycle because he was blocking her way, but complainant testified that she knocked him and his bicycle to the ground); *Duchan v. State*, No. 14–06–00232–CR, 2007 WL 43775, at *3–4 (Tex.App.-Houston [14th Dist.] Jan. 9, 2007, no pet. h.) (not designated for publication) (rejecting argument that evidence suggesting vehicle was not moving very fast when it contacted complainant rendered evidence insufficient to prove vehicle's use was capable of causing death or serious bodily injury). Accordingly, the evidence was sufficient to support the jury's deadly weapon finding. We overrule appellant's third issue.

## III. Jury Charge

In his fourth issue, appellant contends that the trial court erred in refusing to instruct the jury on the lesser included offense of simple assault by threat. A defendant is entitled to a lesser-included offense instruction if (1) the requested instruction constitutes a lesser-included offense of the offense charged, and (2) there is some evidence that if the defendant is guilty, he is guilty only of the lesser offense. *Irving v. State*, 176 S.W.3d 842, 845 (Tex.Crim.App.2005). We review the trial court's decision regarding a lesser-included-offense charge under an abuse of discretion standard. *Jackson v. State*, 160 S.W.3d 568, 572 (Tex.Crim.App.2005). The credibility of the evidence, and whether it conflicts with other evidence, must not be considered in deciding whether the charge on the lesser-included offense should be given. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a charge on a lesser included offense. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim. App.1994). It is not enough that the jury disbelieves evidence pertaining to the greater offense; there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. *Hampton v. State*, 109 S.W.3d 437, 440–41 (Tex. Crim.App.2003) (holding that instruction on lesser included offense was not warranted when the only evidence supporting proposition that no knife was used in al-

---

9. The defendant in *Hoffman* undertook a insurance fraud scheme whereby he caused auto collisions by driving in front of slow-moving motorists and slamming on his breaks. 9 F.3d at 50–51.

leged assault was State's failure to find the knife; in other words, there was no affirmative evidence of the lesser included offense for the jury to consider).

In order to obtain a conviction for simple assault by threat, the State must prove that the defendant intentionally or knowingly threatened another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2). The simple assault charge requested by appellant constituted a lesser included offense of the aggravated assault charge actually given. *See Irving*, 176 S.W.3d at 845–46. The key distinction between the two offenses, as raised by appellant, is that the aggravated assault charge required the State to show that appellant used a deadly weapon during the commission of the assault, whereas the simple assault charge did not. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2).[10] Accordingly, in order for appellant to have been entitled to the simple assault charge, there must have been some evidence presented that would have permitted a rational jury to find that appellant did not use a deadly weapon in committing the assault. More specifically, there must be some evidence upon which the jury could have determined that appellant did not use his vehicle in a manner capable of causing death or serious bodily injury. *See Garcia v. State*, 92 S.W.3d 574, 576 (Tex.App.-Austin 2002, no pet.) ("To be entitled to an instruction on simple assault, it was necessary that there be some evidence that would rationally warrant the jury in finding that appellant did

not use his truck as a deadly weapon. It is not enough that the jury might simply disbelieve crucial evidence; there must be some evidence that the truck was not a deadly weapon in the manner of its use.").

The only evidence regarding the events of the night in question came from Deputy Vest's testimony. As discussed, he testified that appellant initially drove directly at him and only stopped when he (Vest) raised a hand and asked appellant to stop. At that point, the vehicle was approximately one to one-and-a-half car lengths from Vest. Vest then began to walk toward the driver's side of the vehicle, and the vehicle moved forward, hitting Vest at an estimated 5–10 miles per hour. Although Vest admitted that he could not tell exactly how fast the vehicle was traveling when it struck him, he clearly and repeatedly stated that the vehicle struck him with sufficient force to lift him onto the hood.[11] There is no evidence in the record suggesting that events were other than as described by Vest.

Appellant's driving his vehicle directly at Vest at 5–10 miles per hour, a speed sufficient to lift Vest completely onto the hood, constituted operating the vehicle in a manner capable of causing death or serious bodily injury. *See Hoffman*, 9 F.3d at 50; *Johnston*, 150 S.W.3d at 638; *Dolkart*, 197 S.W.3d at 891. Because there is no affirmative evidence in the record that would have permitted a rational jury to find that appellant was guilty only of simple assault, the trial court did not abuse its discretion in refusing to submit the lesser included

---

**10.** Appellant does not raise another distinction between the two offenses, namely that aggravated assault on a public servant requires proof that the defendant knew the object of the threat was a public servant, whereas such status is irrelevant in regards

to simple assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2).

**11.** Indeed, Vest testified that once he was lifted onto the hood, his feet were rubbing the vehicle's front grill. Vest indicated that he did not jump onto the hood, and there is no

offense. *See Garcia,* 92 S.W.3d at 576.[12]
We overrule appellant's fourth issue.

We affirm the trial court's judgment.

evidence that he otherwise crawled or pulled himself further up the hood.

12. In *Garcia,* the court held that the defendant was not entitled to a lesser included charge of assault where the jury was charged on aggravated assault with a deadly weapon and the evidence demonstrated that he drove his truck at 100 miles per hour toward oncoming traffic and collided with another vehicle. 92 S.W.3d at 575–76. Despite the defendant's testimony that he was only trying to escape the police and did not intend to harm the complainants, the court found that there was no affirmative evidence in the record "that would rationally support a finding that appellant assaulted the complainants' but did not use a deadly weapon in doing so." *Id.* at 576; *see also* note 8 *supra* (discussing irrelevance of intent in regards to deadly weapon finding).