Affirmed and Opinion filed July 28, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00739-CR



 

CHARLES EMANUEL JEFFERSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



On Appeal from the 434th
District Court

Fort Bend, Texas

Trial Court Cause No. 08-DCR-048832



 

OPINION

A jury
convicted appellant, Charles Emanuel Jefferson, of two counts of aggravated
assault—deadly weapon.  In two issues, appellant contends the evidence is
legally insufficient to support his convictions and to corroborate accomplice-witness
testimony.  We affirm.

I.   Background

            In October
2007, Theresa Walker resided in a Fort Bend County house with her husband, Albert
Walker Sr., daughter, G.B., son, L.B., and step-son, A.W.  Contemporaneously,
there was a gang-related feud between “100 Click” (with which appellant was
associated) and “Mash Mode” (with which A.W. was associated) pertaining to a
girl who formerly dated a member of 100 Click but was currently dating A.W.    

At
approximately 8:00 p.m. on October 21, Theresa was downstairs in her bedroom which
was located in the rear of the house, and L.B. was upstairs in a game room that
faced the street; no one else was in the house.  Theresa’s black S.U.V. was
parked in her driveway.  Theresa heard gunfire, ran to her closet, and dialed
911.  As evidenced by photographs of the house taken after the shooting, multiple
bullets were fired into the house.  Many of the bullets entered the house and
damaged walls and furniture, including walls in the game room.  Police
collected approximately thirty-two bullet casings outside the house.  The
casings revealed that at least three firearms were used during the attack: an
assault rifle, a hunting rifle, and a pistol.  Additionally, the casings were
spread in a pattern that indicated the shooters had been walking while
discharging their firearms.  Garfield Norris, who was a neighbor of Theresa’s,
testified that he observed four persons shooting at Theresa’s house, including
appellant.

J.H., who
was sixteen years old at the time of the shooting, testified as follows.  She
and several other persons, including appellant and Wilford Trey Jones, were at
Vicline St. Hillaire’s house prior to the shooting.[1] 
Jones was in possession of a firearm.  They rode in multiple vehicles to
Theresa’s house.   When they arrived at the house, “[Jones] got out and some
other boys got out and we just started hearing shooting.”  Although she did not
observe appellant shooting a firearm, J.H. testified appellant was present
during the shooting.

Appellant
was charged with two counts of aggravated assault for intentionally and
knowingly threatening Theresa and L.B. with imminent bodily injury while using
and exhibiting a firearm.  Jones and St. Hillaire were subpoenaed by the State
to testify at appellant’s trial.[2] 
Jones testified that appellant was at the scene of the shooting, but he did not
know whether appellant possessed or shot a firearm.  St. Hillaire testified that
he rode in a vehicle to Theresa’s house that evening but was asleep.  He
explained that he was awakened by the sound of gunfire and did not see who the
shooters were or whether appellant was present at the scene.  The State
presented St. Hillaire’s prior-inconsistent statement in which he told police
that appellant was one of the shooters.  St. Hillaire responded that he made
this statement because of police requests and not because it was true. 

The
trial court instructed the jury that it could consider the testimony of Jones
and St. Hillaire only if the jury found other evidence tended to connect
appellant to the offense.  The jury was also instructed that it could convict
appellant either as a principal or a party to the offense.  The jury convicted
appellant and sentenced him to fifteen years’ confinement on each count, to run
concurrently.

II.   Sufficiency of the Evidence

In his
first issue, appellant contends the evidence is legally insufficient to support
his aggravated-assault convictions. 

A.   Standard of
Review

When reviewing sufficiency of evidence,
we view all of the evidence in the light most favorable to the verdict to
determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Brooks v. State, 323 S.W.3d 893, 899 (plurality
op.).  We may not sit as a thirteenth juror and substitute our judgment for
that of the fact finder by reevaluating the weight and credibility of the
evidence.  Id. at 899, 901; Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999); see also Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986) (expressing that jury may choose to believe or
disbelieve any portion of the testimony).  We defer to the fact finder’s
resolution of conflicting evidence unless the resolution is not rational.  See Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).  The sufficiency of the evidence is measured by elements of
the offense as defined in the hypothetically correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Circumstantial
evidence is as probative as direct evidence in establishing the guilt of an
actor, and circumstantial evidence alone can be sufficient to establish guilt. 
Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007).  An inference is a conclusion reached by
considering other facts and deducing a logical consequence from them.  Id. at 16.  Speculation is mere theorizing or
guessing about the possible meaning of facts and evidence presented.  Id. 
A conclusion reached by speculation may not be completely unreasonable, but it
is not sufficiently based on facts or evidence to support a finding beyond a
reasonable doubt.  Id.  Each fact need not point directly and
independently to the guilt of the appellant, as long as the cumulative effect
of all the incriminating facts are sufficient to support the conviction.  Id.
at 13.

A person commits aggravated assault
if he intentionally or knowingly threatens another with imminent bodily injury
while using or exhibiting a deadly weapon during the assault.  Tex. Penal Code
Ann. §§ 22.01, 22.02 (West 2011).  “Deadly weapon” means a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury or anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury.  Id. § 1.07(17)
(West 2011).  

B.   Analysis

The crux
of appellant’s argument is that no evidence supports a finding that he intended
to threaten Theresa or L.B. with imminent bodily injury.  Appellant
argues that he could not have threatened Theresa with a firearm because she
admitted she did not see anyone use or exhibit a firearm.  Furthermore,
appellant argues that the jury could not determine whether L.B. felt threatened
because he did not testify.  We disagree with appellant’s contentions.

A person
commits assault by threat when he acts with the intent to cause in another
person a reasonable apprehension of imminent bodily injury, though not
necessarily with the intent to cause such harm.  Dobbins v. State, 228 S.W.3d 761, 766
(Tex. App.—Houston [14th Dist.] 2007, pet. dism’d, untimely filed).  It is well
established that a threat may be communicated by action or conduct as well as
by words.  McGowan v. State, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).

Theresa
testified at 8:00 p.m. on October 21, 2007, she was in her downstairs bedroom
and L.B. was in the upstairs game room when she heard multiple gunshots.  At
the time of the shooting, Theresa’s black S.U.V. was parked in front of the
house.  Norris witnessed appellant and three other persons shooting at
Theresa’s house.  As a result of the shooting, the exterior and interior of Theresa’s
house, including the game room, were riddled with bullet holes.  According to
several witnesses, the shooting was the result of a gang-related feud
pertaining to a girl who was dating A.W.  Furthermore, during a police
interview, appellant stated that, prior to the shooting, St. Hillaire “had
asked [appellant] if he was going to help him take care of some business.” 
According to the interviewing officer, after he asked appellant what “take care
of business” meant, “appellant’s best summary . . . was that it was not good.”

We
conclude that this evidence supports a finding beyond a reasonable doubt that appellant
discharged a firearm into Theresa’s home with the intent to cause a reasonable
apprehension of imminent bodily injury to A.W. or his family.[3] 
We recognize that whether shooting at a house constitutes aggravated assault or
the separate offense of deadly conduct depends on the defendant’s mens rea.[4] 
The former offense requires that the defendant intentionally or knowingly threaten
another person, whereas the latter offense requires that the defendant act recklessly
regarding whether the house is occupied.  Compare Tex. Penal Code Ann. §
22.01(a)(2) with id. § 22.05(b)(2) (West 2011).  There was no
direct evidence pertaining to whether appellant or his accomplices knew that
Theresa’s house was occupied during the shooting.  However, evidence the
shooting occurred at 8:00 p.m. and that Theresa’s S.U.V. was parked outside of
her house supports a logical inference appellant and his accomplices believed
persons were inside the house.  The State was not required to prove Theresa and
L.B. actually saw the firearms or elicit testimony from L.B. that he felt
threatened.  Evidence that appellant fired bullets into the house while
believing someone was present supports an inference that he intended to
threaten.  Moreover, the fact that Theresa heard the gunshots and bullets
entered her house, including the room where L.B. had been, supports a finding
that they perceived the threat.  Having reviewed all the evidence in the light
most favorable to the verdict, we conclude the evidence is sufficient to
support appellant’s convictions.  We overrule appellant’s first issue.       

III.   Accomplice-Witness Testimony

In his
second issue, appellant contends the evidence is legally insufficient to
corroborate St. Hillaire’s and Jones’s accomplice-witness testimony.  A defendant
cannot be convicted of an offense based on the testimony of an accomplice
unless such testimony is corroborated by other evidence tending to connect the
defendant to the offense.  Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005).  To ascertain whether the
corroborating evidence is sufficient, we ignore the accomplice-witness
testimony and view the remaining evidence in the light most favorable to the
jury’s verdict.  Malone v. State, 253 S.W.3d 253, 257
(Tex. Crim. App. 2008).  We then ask whether a rational fact finder could have concluded
that the non-accomplice evidence tends to connect the defendant to the offense.
 Simmons v. State, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).  Because
there is no precise regarding to the amount of additional evidence required to
corroborate accomplice witness testimony, we evaluate each case based on unique
facts.  Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).

As noted
above, Norris testified that he saw appellant and three other persons shooting
Theresa’s house on the night in question.  We conclude a rational fact finder could
have determined that this evidence tended to connect appellant to the charged offenses. 
Accordingly, appellant’s second issue is overruled.       

We
affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Boyce.

Publish — Tex. R. App. P. 47.2(b).

 

 

 

 









[1]
Jones and St. Hillaire testified that they were associated with 100 Click,
although they denied that 100 Click is a street gang.    





[2]
Prior to testifying, Jones pleaded guilty to aggravated assault and was
sentenced to five years’ confinement; a jury convicted St. Hillaire of the same
offense and sentenced him to sixteen years’ confinement.





[3]
Even if appellant intended to threaten A.W. only, the jury was instructed that a
person is criminally responsible for causing a result when the only difference
between what actually occurred and what was intended is that a different person
was injured, harmed, or otherwise affected.  See Tex. Penal Code Ann. §
6.04(b) (West 2011) (transferred intent).





[4]
Appellant was not charged with the lesser-included offense of deadly conduct, and
an instruction regarding this offense was not submitted to the jury.