**Affirmed and Memorandum Opinion filed March 20, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00121-CR

_____

### JOSE GUADALUPE TRINIDAD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1231200**

## M E M O R A N D U M   O P I N I O N

Appellant, Jose Guadalupe Trinidad, appeals his conviction of capital murder. In his sole issue, appellant contends the trial court erred by refusing to submit a jury instruction on the lesser-included offense of felony murder. We affirm.

### BACKGROUND

According to the State's evidence, complainant, Clarence Howard, was the employer of Nadia Paz Funez's brother. The brother asked Funez to assist Howard in locating cocaine to purchase. Funez arranged for Howard to make the purchase in Houston through Jose Garcia, who was dating Funez's cousin. According to Garcia, he,

in turn, arranged to obtain two kilograms of cocaine from a supplier. The price quoted for the sale to Howard was $51,000: $50,000 for the supplier; and $1,000 for Garcia and Funez to share.

On August 18, 2009, Funez introduced Howard to Garcia in Funez's apartment. The supplier did not arrive, and Garcia purportedly attempted to contact him. Then, three men broke through the front door, yelling "police, police." They were armed with handguns, and their faces were covered with ski masks or pantyhose. The men forced Garcia and Funez to the floor in the living area, but Howard escaped into a bedroom. One man guarded Garcia and Funez at gunpoint while the other two men followed Howard into the bedroom. Garcia and Funez heard a struggle, consisting of "arguing" and "shoving" and Howard saying words to the effect of "pocket pocket." Garcia then heard two or three gunshots followed by glass breaking. Funez also heard gunshots and glass breaking but did not know which occurred first. The perpetrators ran out of the apartment through the front door, taking Garcia's mobile phone and Howard's satchel but not the $52,000 in Howard's pockets. The breaking glass resulted from Howard exiting the bedroom through a window. Howard collapsed on a nearby sidewalk and died from a gunshot wound which had entered his back and travelled through his torso.

Investigating officers found an unfired bullet, a fired cartridge, and bullet fragments on the bedroom floor, a bullet strike to the bedroom-window frame, a bullet hole in the window curtain, and a fired bullet in the wall of a ventilation area adjacent to the bedroom. The officers determined that at least two semi-automatic pistols—a .40 caliber and a .45 caliber—were fired during the incident, and Howard was shot with the .45 caliber gun. The officers also noticed disarray in the bedroom consistent with a struggle. When questioned by the police, Garcia and Funez claimed they could not identify any perpetrators. Officers eventually determined the identity of suspects after Garcia, who had obtained a new mobile phone but with the same number, received calls from persons attempting to contact one of the perpetrators.

2

After officers located appellant, he gave two statements, which were admitted at trial. In the statements, appellant eventually admitted the following: Funez's cousin informed another man about the intended drug transaction; this man conceived a plan to rob the participants and enlisted five other perpetrators, including appellant; three perpetrators entered the apartment carrying guns while appellant stood guard outside the door and the other two perpetrators waited in a car nearby; and appellant heard a struggle, glass breaking, and two or three gunshots before his accomplices exited the apartment.

Officers arrested four of the perpetrators, including appellant, but could not locate the other two men. The other perpetrators who were arrested gave somewhat conflicting accounts to the police, but officers never determined that appellant was one of the men who wielded a gun during the incident.

Appellant was tried for capital murder. After the close of evidence, appellant requested a jury instruction on felony murder as a lesser-included offense. The trial court denied the request although it submitted an instruction on aggravated robbery as a lesser-included offense. The trial court also submitted an instruction on the law of parties. A jury convicted appellant of capital murder, and the trial court sentenced him to confinement for life.

## ANALYSIS

In his sole issue, appellant contends the trial court erred by refusing to submit a jury instruction on the lesser-included offense of felony murder.

A defendant is entitled to submission of an instruction on a lesser-included offense if two conditions are satisfied: (1) the offense is a lesser-included offense of the charged offense; and (2) there is some evidence in the record "from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008); *see Hall v. State*, 225 S.W.3d 524, 534–37 (Tex. Crim. App. 2007). In this case, the first condition is satisfied because felony murder is a lesser-included offense of capital murder. *See Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004).

3

In determining whether the second condition is satisfied, we review all evidence presented at trial without considering its credibility or whether it conflicts with other evidence. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *Delacruz v. State*, 278 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to an instruction on the lesser-included offense. *Hall*, 225 S.W.3d at 536; *Dobbins v. State*, 228 S.W.3d 761, 768 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd, untimely filed). Before a defendant is entitled to a charge on a lesser-included offense, the evidence must not merely raise the possibility of the lesser offense, but must establish the lesser offense as a valid rational alternative to the charged offense. *Wesbrook v. State*, 29 S.W.3d 103, 113–14 (Tex. Crim. App. 2000). However, if a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing he is guilty of only a lesser-included offense, a charge on a lesser-included offense is not required. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). There must be some evidence directly germane to the lesser-included offense before an instruction is warranted. *Dobbins*, 228 S.W.3d at 768.

Relative to the present case, a person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit robbery. Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2011). A person commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *Id.* § 19.02(b)(3) (West 2011). The element distinguishing capital murder from felony murder is intent to kill. *Threadgill*, 146 S.W.3d at 665. Felony murder is an unintentional murder in the course of committing a felony whereas capital murder includes an intentional murder in the course of committing a felony. *See id.*

Appellant does not challenge sufficiency of the evidence to support his conviction, much less conviction under the law of parties. Appellant effectively acknowledges that,

4

as a party to the robbery, he is criminally responsible for his accomplice's act of shooting Howard. *See* Tex. Penal Code Ann. § 7.02(b) (West 2011) ("If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."). Instead, appellant contends he was entitled to an instruction on the lesser-included offense of felony murder because the shooter might have unintentionally killed Howard during the struggle in the bedroom. However, appellant cites, and we have found, no evidence supporting this proposition.

First, there was no evidence that the gunman fired the fatal shot during the struggle as opposed to shooting Howard as he attempted to flee through the bedroom window. Appellant presented no evidence at trial. The State's evidence indeed demonstrated that a struggle occurred, and gunshots were fired, in the bedroom. However, there was no testimony or out-of-court statement presented of any person who participated in, or observed, the incident in the bedroom. The only first-hand account regarding the incident in the bedroom was contained in appellant's statements to the police when he relayed information provided to him by his accomplices:

| [Officer]: | Uh, afterwards how did you find out what happened? Did you go to whose house? Did someone came [sic] to your house? Did you all call each other on the phone? How did it go? Where did you all meet up? |
|---|---|
| [Appellant]: | That they had made shots and that they had fucked up and they hadn't taken anything. |

. . .

| [Officer]: | And who told you that Gera, uh no, that, that Pelon and, and, and Chaparro had shot? |
|---|---|
| [Appellant]: | They themselves, saying, "Bitch, I shot, Crazy, I shot." |

[Officer]: Which one of them said that he shot at the white guy that was going through the window?

[Appellant]: I believe it was Chaparro.

[Officer]: Okay.

[Appellant]: He's the one that had the .45.

. . .

[Officer]: Uh, afterwards, in person or by phone, what did you find out about what had happened inside the apartment?

[Appellant]: No, then it was that [Funez's cousin] called to say that the guy was laid out . . . That he was dead . . . and no one believed it because the dude took off running through the window, no one believed that he was dead.

During this exchange, appellant did not directly state that he was told his accomplice shot Howard as he attempted to flee through the window; but appellant seemed to acknowledge that such a description accurately summarized the incident. Moreover, the medical examiner could not determine Howard's proximity to the gun when the fatal shot was fired because there was no soot, gunpowder, abrasions, or stippling around the wound to indicate the shot was fired at close range but Howard's clothing could have blocked accumulation of such materials on the skin even if he was shot at close range.

Even if the fatal shot was fired during the struggle, such fact alone would not constitute evidence that the shooter *unintentionally* killed Howard. In his appellate brief, appellant suggests two alternative scenarios supporting his position: "There was evidence from which a rational jury could have concluded that the gun went off unintentionally as the men struggled over the gun, or that the actual shooter did not intend the complainant's death."

With respect to the first scenario, there was no evidence that the gun accidently discharged while Howard and the shooter struggled over it; appellant relies solely on a mere possibility that the gun was fired in such a manner, which was insufficient to

6

constitute evidence requiring submission of the lesser-included offense. *See Wesbrook*, 29 S.W.3d at 113–14; *Dobbins*, 228 S.W.3d at 768. In fact, the evidence actually negated that the fatal shot was accidently discharged while Howard and the shooter struggled over the gun because Howard was shot in the back. Finally, nothing in the above-quoted account of the incident relayed by the accomplices to appellant indicated any shots were fired accidently.

With respect to the second scenario, appellant apparently suggests that the shooter might have intentionally fired the gun during the struggle but did not intend to kill Howard. However, when a deadly weapon is fired at close range and death results, "the law presumes an intent to kill." *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981); *see Draper v. State*, 335 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Therefore, the shooter's act of intentionally firing the gun while struggling with Howard would negate any suggestion that he did not intend to kill Howard.

Accordingly, the trial court did not err by refusing to submit a lesser-included-offense instruction. We overrule appellant's sole issue and affirm the trial court's judgment.

/s/     Charles W. Seymore
Justice

Panel consists of Justices Seymore, Boyce, and Mirabal.[1]

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[1] Senior Justice Margaret Garner Mirabal sitting by assignment.

7