**Opinion issued June 4, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00544-CR

———————————

### JOSÉ VELEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 187th District Court**
**Bexar County, Texas[1]**
**Trial Court Case No. 2013-CR-0307C**

---

## MEMORANDUM OPINION

The State charged José Velez with the murder of Juan Malacara Romero.

The indictment included an enhancement paragraph alleging that Velez had a

---

[1]     On July 1, 2014, the Texas Supreme Court ordered this appeal transferred from the Court of Appeals for the Fourth District of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases). We are unaware of any conflict between the precedent of the Court of Appeals for the Fourth District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

previous felony conviction for indecency with a child. After a trial, a jury found Velez guilty of murder and found the enhancement paragraph true. It assessed a punishment of 45 years' imprisonment and a $10,000 fine.

On appeal, Velez contends that the trial court erred in denying his requests for two jury instructions, one on the lesser-included offense of manslaughter and the other on the law of self-defense. We affirm.

## Background

Romero and Larry Castro were regulars in a pool league that met Monday evenings at a sports bar in San Antonio. They had once played on the same team, but by 2012, they played on opposing teams. One Monday evening in October 2012, they were participating in a league tournament when two men, later identified as Velez and Bernard Crisanto, walked into the bar. Crisanto had accompanied Velez into the bar because Velez had told him that he needed to go there to pick up some money.

The bar owner did not recognize Crisanto and Velez, but later recalled having noticed them because they both were tall and one was wearing a muscle shirt, which violated the bar's dress code. While the owner considered whether to ask Crisanto and Velez to leave because of the violation, the two men approached Castro. Within a few minutes—before the bar owner spoke to them—all three men left the bar together.

In the meantime, Romero had left the bar to buy cigarettes at the convenience store across the street. Crisanto and Velez walked into the store, followed Romero out, and confronted him. Romero acknowledged the two men. He seemed to look behind them, where Castro was standing, then suddenly started running back to the store. Castro charged forward and pushed Romero into the door, pinned him, and threw him to the pavement. Then, Castro grabbed Romero's leg and pulled him between two cars parked in front of the store. Castro began kicking Romero, and Crisanto and Velez joined in. Crisanto kicked Romero in the head, while Velez kicked him in the abdomen. The men were significantly larger than Romero; Romero tried to fight back, but eventually rolled into a ball and lost consciousness.

Velez, Castro, and Crisanto stopped kicking Romero and left the scene shortly after he became unconscious. Castro returned to the bar, agitated. He retrieved his pool cues, and he and his wife abruptly left the bar. The other two men, who had parked their cars nearby, also left the area.

A convenience store employee called 9-1-1 when he saw the fight begin. After the three assailants left the scene, another employee attended to Romero and stayed with him until the emergency responders arrived. A security video camera at the convenience store captured the entire incident.

Romero died that evening. He had several blunt force injuries, abrasions, and contusions on his face, abdomen, back and arms, multiple rib fractures, and internal bruising in two areas deep beneath his scalp. The forensic pathologist from the Bexar County Medical Examiner's office who performed the autopsy ruled that the cause of Romero's death was homicide through blunt force trauma to the chest, which caused a large tear through the epicardium, the membrane between the pericardium and the outer surface of the heart.

After the State rested its case in chief, the defense proffered an excerpt of Castro's testimony from his trial. In the portion read to the jury in this case, Castro stated that he was in fear for his life when he saw Romero because Romero had previously threatened to kill him and had beaten him with a cue ball. Castro explained that he had been warned by other pool tournament participants not to come to the tournament because Romero was going to be there. Castro recounted that when he saw Romero in front of the convenience store, Romero had his hand in his pocket and that he kept trying to reach into his pocket even after Castro knocked him to the ground. Castro testified that he kicked Romero's hands to keep him from reaching into his pocket. The homicide detectives did not recover any weapons from Romero, only a cell phone.

**Charge Error**

## I. Standard of Review

Both of Velez's issues complain that the trial court erred in refusing to submit tendered instructions to the jury. In analyzing a jury-charge issue, we first must decide if error exists. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (explaining that preservation of charge error does not become issue until court determines that harm exists); *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). When, as here, the appellant has properly preserved the claimed error by a timely objection to the charge, the conviction will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *see Jimenez v. State*, 32 S.W.3d 233, 237 (Tex. Crim. App. 2000) (reversal required if error "was calculated to injure the rights of the defendant"—that is, that defendant suffered "some harm"). In deciding whether appellant suffered some harm, we consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence;

(3) counsel's argument; and (4) the whole record. *Abdnor v. State*, 871 S.W.2d 726, 739–40 (Tex. Crim. App. 1994); *Almanza*, 686 S.W.2d at 171. The "some harm" test does not mandate reversal on a showing of possible harm—it requires that the appellant establish actual harm. *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999). The appellate court reviews the evidence and any part of the record as a whole that illuminates "the actual, not just theoretical, harm to the accused." *Id.* at 643; *Almanza*, 686 S.W.2d at 174.

## II. Refusal of manslaughter instruction as lesser-included offense

Velez first contends that the trial court committed harmful error by failing to charge the jury with the lesser-included offense of manslaughter.

### A. Applicable law

An offense qualifies as a lesser-included offense of the charged offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

We employ a two-pronged test in determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011); *Ex parte Watson*, 306 S.W.3d 259, 262–63 (Tex. Crim. App. 2009); *see also Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). The first prong of the test requires the court to use the "cognate pleadings" approach to determine if an offense is a lesser-included offense of another offense. *See Watson*, 306 S.W.3d at 271. The first prong is met if the indictment for the greater-inclusive offense either: "(1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Id.* at 273. This is a question of law, and it does not depend on the evidence to be produced at trial. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535.

The statutory distinction between murder and manslaughter is that murder requires a defendant to have intended to cause serious bodily injury and to have committed an act clearly dangerous to human life that causes the death of an individual, while a defendant need only have acted recklessly to be guilty of manslaughter. *Compare* TEX. PENAL CODE ANN. §§ 19.02(b)(1) & (2) (West 2011) (providing, in pertinent part, that a person commits murder "if he intentionally or

knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual") *with id.* § 19.04 (providing that a person commits manslaughter "if he recklessly causes the death of an individual"). The Court of Criminal Appeals has determined that manslaughter is a lesser-included offense of murder under section 19.02(b)(2) of the Penal Code, the statutory basis for Velez's indictment. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). Accordingly, Velez's request meets the first prong.

A defendant is entitled to a requested instruction on a lesser-included offense when some evidence in the record would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall*, 225 S.W.3d at 536 (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "The credibility of the evidence, and whether it conflicts with other evidence, must not be considered in deciding whether the charge on the lesser-included offense should be given." *Dobbins v. State*, 228 S.W.3d 761, 768 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) (citing *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992)). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge of a lesser-included offense, but it is not enough that the jury may disbelieve crucial evidence

pertaining to the greater offense. *Hall*, 225 S.W.3d at 536; *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).

For a manslaughter instruction to be proper, the record therefore must contain some affirmative evidence from which a rational jury could infer that Velez was aware but consciously disregarded a substantial and unjustifiable risk that Romero's death would occur as a result of his conduct. *See* TEX. PENAL CODE ANN. § 6.03(c) (West 2011) (defining "reckless"); *Cavazos*, 382 S.W.3d at 385.

## B.    Analysis

Velez relies on the excerpt of Castro's testimony from Castro's earlier trial as evidentiary support for his requested manslaughter instruction. Velez points to: (1) Castro's testimony that neither he, Velez, nor Crisanto used weapons in the attack and Castro tried to keep Romero from reaching into his pockets because he feared that Romero had a weapon; (2) Crisanto's testimony that he did not plan to attack Romero and did not intend to seriously injure him; and (3) evidence that Romero did not appear mortally wounded because he died from internal injuries rather than external, observable ones.

Nothing in the record suggests that Castro communicated his fears about Romero carrying a weapon to Velez. Castro conceded that he did not tell Velez that Romero might have a gun or a knife. Further, Castro did not ask Velez or Crisanto to help with the assault; they simply joined in. The three men easily

9

could have overpowered Romero and taken any weapon from him, but they did not attempt to do so: instead, the video reveals that Crisanto kicked Romero in the head while Velez kicked him in the abdomen. More important, the men continued to assault Romero even after Romero stopped resisting, until he became unconscious. No affirmative evidence in the record supports a reasonable inference that Velez did not intend to commit serious bodily injury as he repeatedly kicked Romero with sufficient force to break multiple ribs and mortally wound him. *See* TEX. PENAL CODE ANN. § 19.04; *cf. id.* § 19.02(b)(2) (providing that person commits murder if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual"). The record does not permit a rational finding that Velez is guilty only of manslaughter. *See Hall*, 225 S.W.3d at 536. We therefore conclude the trial court did not err in denying Velez's request for a manslaughter instruction.

## C. Refusal of self-defense instruction

In his second issue, Velez contends that the trial court erred in refusing to submit his requested jury instruction pursuant to Texas Penal Code section 9.04, relating to self-defense. We review a trial court's denial of a request to include an instruction on a defensive issue in the charge for an abuse of discretion, and we view the evidence in the light most favorable to the defendant's requested submission. *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006);

10

*Love v. State*, 199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Velez again relies on Castro's testimony to support his request for a self-defense instruction. According to Velez, the evidence of Castro's fear that Romero was reaching for a weapon also raises a factual issue concerning whether Velez was acting in self-defense.

We disagree. "[A] defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Shaw*, 243 S.W.3d at 659; *see Ford v. State*, 112 S.W.3d 788, 794 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (explaining that assertion of defense is inconsistent with denial of charged conduct).

Velez denied committing murder. He did not proffer any evidence admitting to the elements of the offense, and no evidence supports a reasonable inference that Velez reasonably believed that Romero would cause Velez serious bodily injury. Accordingly, the trial court properly concluded that Velez was not entitled to the requested jury instruction on self-defense. *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding that if no evidence suggests accused responded to, or believed he was responding to use of unlawful force, he is not entitled to self-defense instruction).

## Conclusion

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).