In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00383-CR
_____

DECOBI MILES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 16-26366

MEMORANDUM OPINION

A jury found Decobi Miles guilty of aggravated assault on a public servant and assessed Miles's punishment at eighteen years of confinement. *See* Tex. Penal Code Ann. § 22.02(a)(2), (b)(2) (West 2011). In one appellate issue, Miles challenges the sufficiency of the evidence supporting his conviction. We affirm the trial court's judgment.

1

## The Indictment

A grand jury indicted Miles for aggravated assault on a public servant, alleging that:

> . . . Decobi Miles, hereafter styled the Defendant, on or about the 6th day of November, two thousand and sixteen, . . . did then and there intentionally and knowingly threaten imminent bodily injury to Chris Robin, hereafter styled the Complainant, a public servant, in the lawful discharge of an official duty, to wit: law enforcement, knowing and having been informed at the time that the Complainant was a public servant, with the use of a deadly weapon, namely, an automobile, that in the manner of its use and intended use is capable of causing serious bodily injury and death[.]

## Evidence at Trial

Officer Chris Robin with the Groves Police Department testified that he was on patrol on November 6, 2016, in Groves when he witnessed a vehicle speeding. Officer Robin engaged his emergency lights and initiated a traffic stop, and the vehicle pulled into a parking spot at the entrance of a gas station. According to Officer Robin, when he approached the vehicle he observed the driver and two passengers. Officer Robin testified that the driver provided his name and date of birth. Officer Robin identified Miles as the driver.

According to Officer Robin, Miles did not have a driver's license and one of the passengers had bandages over his head. Officer Robin testified that the vehicle's occupants had noted that the passenger with the bandages had been shot recently and

2

had just been released from the hospital. According to Officer Robin, because dispatch informed him that Miles had three traffic warrants out of Port Arthur, he was required to arrest Miles. Officer Robin testified that he and Officer Rudy Guerrero, who had arrived to assist Officer Robin, approached the vehicle. Officer Robin testified that he approached from the driver's side and Officer Guerrero approached from the passenger side. According to Officer Robin, he asked Miles to get out of the vehicle. In response, Miles continued to ask if he was going to jail, and Officer Robin explained to Miles that he wanted to talk to him about the traffic stop and go over the citation information. Officer Robin testified that he was trying to get Miles out of the car without incident so that he could arrest Miles.

Officer Robin testified that as he approached the vehicle a second time, Miles became upset and Officer Robin made requests for Miles to get out of the car and step to the back, and Officer Robin then told Miles that he was going to jail. According to Officer Robin, Miles rolled the window up and reversed his vehicle with the steering wheel turned all the way clockwise, which resulted in Officer Robin having to move backwards, nearly wedging Officer Robin between the vehicle and his patrol car that was behind Miles's vehicle. Officer Robin testified that while this was occurring he saw the distance between himself and his patrol car "closing extremely fast[,]" and he was in fear of suffering serious bodily injury because he

3

"thought a portion of [his] body, if not [his] whole entire bottom half, was going to be crushed between the two vehicles." Officer Robin testified that although he was able to get out of the way uninjured, Miles's vehicle continued in reverse and struck the front of Officer Robin's patrol car and then a pole by a gas pump. According to Officer Robin, Miles then put the vehicle in drive and drove between Officer Robin's and Officer Guerrero's patrol cars, clipping the back right side bumper or fender area of Officer Robin's patrol car. Officer Robin testified that he and Officer Guerrero drew their weapons as Miles left the scene, but the officers did not use their weapons because of the other passengers in Miles's vehicle, the location of the gas station, and the repositioning of other officers.

Officer Robin testified that the three officers each pursued Miles in their patrol vehicles, but Miles was able to escape their pursuit. A video recording of the stop from Officer Robin's patrol car equipment and photographs of the damage to Officer Robin's patrol car were admitted into evidence and published to the jury.

Officer Robin agreed that an automobile is a deadly weapon, that at the time of the incident he was in fear for his life, and that from where he was standing he could have been injured or killed if he had not gotten out of the way. On cross-examination, Officer Robin acknowledged that Miles's vehicle did not hit him and

4

that, although it was apparent Miles was trying to flee the area, Officer Robin did not know if Miles was trying to hit him.

Officer Aaron Tabor with the Groves Police Department testified that he was on patrol the same night and arrived at the traffic stop as Officer Robin was telling the driver to get out of the car. According to Officer Tabor, a vehicle can be used as a deadly weapon, and after he observed the driver place the car in reverse and "nearly strike an officer and hit a patrol unit," Officer Tabor drew his weapon. Officer Tabor testified that he believed when Miles was driving in reverse that Officer Robin was going to "get smashed between two cars." Officer Tabor testified that during the pursuit, Miles was driving "probably about a hundred miles an hour[]" in an area where the speed limit was forty-five miles per hour and that Miles escaped the pursuit as officers were having to slow down through intersections. A video recording of the incident from Officer Tabor's patrol car was admitted into evidence and published to the jury.

Officer Rudy Guerrero with the Groves Police Department testified that he was working patrol and assisted Officer Robin as back-up after Robin made the traffic stop and determined the driver had outstanding warrants. According to Officer Guerrero, as Officer Robin was asking the driver to exit the vehicle, Officer Guerrero approached the passenger door to watch the passengers and the back door was

5

opened. The back passenger had a bandage on his head and informed Officer Guerrero that he had been shot the day before. Officer Guerrero testified that Miles kept asking if he was going to jail and finally he told Miles, "[y]es," and then Officer Robin told him, "Yes." Officer Guerrero testified that Miles then put the car in reverse, started backing up, and Officer Guerrero had to get out [of] the way because he was standing "in the door jam[.]" Officer Guerrero testified that Miles saw the officers surrounding the car, and that Miles turned around and looked at him before putting the car in reverse. Officer Guerrero agreed that at the time he was in fear of serious bodily injury or death and that Officer Robin almost got his leg trapped between the patrol vehicle and the bumper of his car. According to Officer Guerrero, the backseat passenger jumped out of the vehicle as Miles backed up. Officer Guerrero joined in pursuing Miles but eventually lost sight of him. According to Officer Guerrero, none of the officers were injured during the incident. On cross-examination, Officer Guerrero testified that Miles intended to get away, but Officer Guerrero agreed that he did not know whether Miles intentionally tried to run over him. A video recording from Officer Guerrero's vehicle equipment was admitted and published to the jury.

Standard of Review

When evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Temple*, 390 S.W.3d at 360; *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (citing *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974)); *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984) ("A jury, sitting as the trier of facts, may accept or reject any or all of the testimony adduced.") (citing *Ables v. State*, 519 S.W.2d 464, 465 (Tex. Crim. App. 1975); *Esquivel*, 506 S.W.2d at 615)). We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We may not substitute our judgment for that of the factfinder concerning the weight and credibility of the evidence. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in

favor of the prevailing party. *See Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

A person commits the first-degree felony offense of aggravated assault on a public servant if he (1) intentionally or knowingly threatens imminent bodily injury, (2) to a person he knows is a public servant, (3) while the public servant is lawfully discharging an official duty, and (4) uses or exhibits a deadly weapon during the assault. Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2) (West 2011 & Supp. 2018). A person acts intentionally "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a) (West 2011). A person acts knowingly "with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist[,]" or if he "is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). Intent or knowledge is a fact question to be determined from the totality of the circumstances. *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998); *Dobbins v. State*, 228 S.W.3d 761, 764 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd). The jury may infer intent from circumstantial evidence, including the defendant's acts, words, or conduct. *Guevara v. State*, 152 S.W.3d 45, 49-50 (Tex. Crim. App. 2004); *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

8

## Sufficiency of the Evidence

On appeal, Miles does not challenge the allegations that Officer Robin was a public servant lawfully discharging an official duty or that Miles was using or exhibiting a deadly weapon during the assault. Instead, he argues that, although the evidence supports a finding that his conduct was reckless, the evidence does not support a finding that he committed the offense intentionally and knowingly as alleged in the indictment. Miles bases his argument on Officer Robin's testimony that he could not say what Miles intended to do and Officer Guerrero's testimony that Miles intended to get away and was reckless in doing so.

Officer Robin's testimony that he could not say what Miles intended to do and Officer Guerrero's testimony that Miles intended to get away and was reckless in doing so does not preclude a determination that, in attempting to flee, Miles also intentionally or knowingly threatened Officer Robin with bodily injury. The jury heard Officer Robin's testimony that he had approached Miles on the driver's side, that Robin was speaking to Miles who was distraught when he learned he would be going to jail, that prior to fleeing Miles reversed his vehicle with the steering wheel turned all the way clockwise, and that Officer Robin was nearly pinned between his patrol car and the vehicle. The jury also heard Officer Guerrero's testimony that Miles saw the officers before putting his vehicle in reverse and before nearly

9

trapping Officer Robin between the patrol car and the vehicle. The jury also viewed multiple videos of the incident from the officers' patrol vehicles. Based on this evidence, a rational jury could have believed that Miles knew that his actions were reasonably certain to threaten Officer Robin with bodily injury or that his conscious desire was to threaten Officer Robin with bodily injury. Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found that Miles intentionally or knowingly threatened Officer Robin with bodily injury. *See Dobbins*, 228 S.W.3d at 765 (In rejecting the defendant's contention that the evidence showed at most an intent to leave the scene and his recklessness, the Fourteenth Court of Appeals concluded that the evidence supported the finding that the defendant saw the officer in front of the vehicle and intentionally or knowingly drove the vehicle into the officer.); *Sneed v. State*, 803 S.W.2d 833, 837 (Tex. App.—Dallas 1991, pet. ref'd) (In rejecting the defendant's contention that he did not intend to injure the officers but only intended to escape and finding the evidence sufficient to support a finding that the defendant knowingly injured the officers, the Dallas Court of Appeals noted that "[k]nowledge of the probable result is sufficient. If [the defendant] intended only to escape but was aware that flooring the accelerator while [the officers] leaned inside the [vehicle] was reasonably certain to cause them bodily injury, the offense was complete."). We conclude that the evidence is

sufficient to support a finding that Miles committed the offense of aggravated assault of a public servant with a deadly weapon. Miles's issue is overruled. We affirm the trial court's judgment.

      AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 26, 2018
Opinion Delivered December 5, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

11